# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION SECURITIES LITIGATION | Civil Action No. 2:16-cv-06509 (ES) (CLW)<br><br><br><br>Motion Date:  December 20, 2021 |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN ATTORNEYS' FEES AND LITIGATON EXPENSES

**LOWENSTEIN SANDLER LLP**
Michael B. Himmel
Michael T.G. Long
One Lowenstein Drive
Roseland, NJ 07068
Telephone (973) 597-2500

*Liaison Counsel for Lead Plaintiffs
and the Settlement Class*

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
John Rizio-Hamilton (*pro hac vice*)
Abe Alexander (*pro hac vice*)
Jesse Jensen (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Lead Counsel for Lead Plaintiffs
and the Settlement Class*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ III

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 4

I.  PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION FROM
    THE COMMON FUND ........................................................................................ 4

II. THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE
    COMMON FUND .............................................................................................. 5

III. THE REQUESTED FEE IS REASONABLE UNDER EITHER THE
     PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD ........... 6

    A.  The Requested Fee Is Reasonable Under the Percentage-of-Recovery
        Method ...................................................................................................... 6

    B.  The Reasonableness of the Requested Fee Is Confirmed by a Lodestar
        Cross-Check .............................................................................................. 8

IV. THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT
    CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ............... 10

    A.  The Size of the Common Fund Created and the Number of Persons
        Benefited Support Approval of the Fee Request ................................... 10

    B.  The Reaction of the Settlement Class to the Settlement and Fee Request To
        Date Supports Approval of the Fee Request.......................................... 11

    C.  The Skill and Efficiency of Plaintiffs' Counsel Support Approval of the Fee
        Request.................................................................................................... 12

    D.  The Complexity and Duration of the Litigation Support Approval of the Fee
        Request.................................................................................................... 13

    E.  The Risk of Non-Payment Supports Approval of the Fee Request ...................... 14

    F.  The Significant Time Devoted to this Case by Plaintiffs' Counsel Supports
        Approval of the Fee Request.................................................................. 15

    G.  The Requested Fee of 20% of the Settlement Fund is within the Range of
        Fees Typically Awarded in Actions of this Nature................................ 16

i

H.    The Fact that All Benefits of the Settlement Are Attributable to the Efforts of Plaintiffs' Counsel Support Approval of the Fee Request .............................. 16

I.    The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request ........................................................................................... 17

V.    LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED ................................................. 18

VI.    LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER 15 U.S.C. §78U-4(a)(4) ....................................................................... 19

VII.    CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Aetna Inc. Sec. Litig.*,
    2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ................................................................. 7

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
    No. 03-1519, slip op. (D.N.J. Jan. 30, 2013), ECF No. 405 ............................. 6, 7

*In re Amaranth Nat. Gas Commodities Litig.*,
    2012 WL 2149094 (S.D.N.Y. June 11, 2012) ........................................................ 8

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ........................................................................ 7, 12

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ................................................................ 5, 6, 8, 17

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
    148 F. Supp. 3d 303 (S.D.N.Y. 2015) ............................................................... 7, 8

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) .............................................................................................. 5

*Billitteri v. Sec. Am., Inc.*,
    2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ........................................................ 8

*Blum v. Stenson*,
    465 U.S. 886 (1984) ............................................................................................ 17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................. 4

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ................................................................................. 4

*Cornwell v. Credit Suisse Grp.*,
    No. 08-cv-03758 (VM), slip op. (S.D.N.Y. July 18, 2011), ECF No. 117 .............. 8

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ......................................................................... 12

*In re Datatec Sys., Inc. Sec. Litig.*,
    2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................................................ 13

*Demaria v. Horizon Healthcare Servs., Inc.*,
    2016 WL 6089713 (D.N.J. Oct. 18, 2016) ........................................................... 9

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009)..................................................................4, 5, 10, 18

*In re Equifax Inc. Sec. Litig.*,
   No. 1:17-cv-03463-TWT, slip op. (N.D. Ga. June 26, 2020)...................................20

*Fogarazzo v. Lehman Bros., Inc.*,
   2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ........................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)...................................................................................6

*In re Genta Sec. Litig.*,
   2008 WL 2229843 (D.N.J. May 28, 2008) ..........................................................13

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)...........................................................................4, 10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)....................................................................................10, 11

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)................................................................ *passim*

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013)..............................................................................6

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)...........................................................................................5

*Knurr v. Orbital ATK, Inc.*,
   No. 1:16-cv-01031-TSE-MSN, slip op. (E.D. Va. June 7, 2019), ECF No. 462.....................7

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009) ..............................................................6

*Landmen Partners Inc. v. The Blackstone Grp. L.P.*,
   No. 08 Civ. 3601 (HB), slip op. (S.D.N.Y. Dec. 18, 2013), ECF No. 191 ............................8

*Lanni v. New Jersey*,
   259 F.3d 146 (3d Cir. 2001).................................................................................9

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004)
   *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004)..........................................11

*Local 703 v. Regions Fin. Corp.*,
   2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) .......................................................7

iv

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................ 20

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ................................................................................................ 9

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
  No. 08-cv-5653-PAC, slip op. (S.D.N.Y. May 10, 2016), ECF No. 277 ................ 7

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...................................................... 6, 17

*In re PAR Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ............................................................. 4

*In re Processed Egg Prods. Antitrust Litig.*,
  2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ......................................................... 18

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ..................................................................... 10, 16, 18

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................................................ 9

*Ret. Ass'n v. ComScore, Inc.*,
  2018 WL 8801073 (S.D.N.Y. June 7, 2018) .......................................................... 7

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................................... 7

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................ 7, 9

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ........................................................................... 5, 6, 8

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  2008 WL 9447623 (D.N.J. Dec. 9, 2008) ............................................................. 20

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................ 18

*San Antonio Fire & Police Pension Fund v. Dole Food Co.*,
  No. 1:15-cv-1140-LPS, slip op. (D. Del. July 18, 2017) ........................................ 6

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012) ........................................................... 15

*In re Schering-Plough Corp. ENHANCE Sec. Litig.*,
    2013 WL 5505744 (D.N.J. Oct. 1, 2013) .................................................................8, 9, 20

*In re Schering-Plough Corp. Sec. Litig.*,
    No. 01-CV-0829 (KSH/MF), slip op. (D.N.J. Dec. 31, 2009), ECF No. 163 .........................7

*Schuler v. Medicines Co.*,
    2016 WL 3457218 (D.N.J. June 24, 2016) ......................................................................5, 10

*In re Signet Jewelers Ltd. Secs. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........................................................................7

*In re Snap Inc. Sec. Litig.*,
    Case No. 2:17-cv-03679-SVW-AGR, slip op. (C.D. Cal. Mar. 9, 2021), ECF No. 400 ..........7

*Stevens v. SEI Invs. Co.*,
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020) .............................................................................9

*Sullivan v. DB Invs.*,
    667 F.3d 273 (3d Cir. 2011) .............................................................................................5, 6, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...............................................................................................................5

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
    No. 08 Civ. 11117 (TPG), slip op. (S.D.N.Y. Aug. 8, 2011), ECF Nos. 603 .........................8

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) .......................................................................................15

*In re ViroPharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ....................................................................11, 18

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..........................12, 14

*In re Wilmington Trust Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018) ............................................................................6

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................4, 5

**STATUTES**

15 U.S.C. §78u-4(a)(4) ..........................................................................................................19

Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") respectfully submits this memorandum of law in support of its motion for: (i) an award of attorneys' fees for all Plaintiffs' Counsel in the amount of 20% of the Settlement Fund, net of litigation expenses; (ii) an award of $271,858.21 in litigation expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (iii) awards of $40,375 to Union Asset Management Holding AG ("Union"), $11,250 to Amalgamated Bank, as Trustee for the LongView Collective Investment Funds ("Amalgamated"), and $16,730 to the Fire and Police Pension Association of Colorado ("Colorado FPPA" and, with Union and Amalgamated, "Lead Plaintiffs"), for their costs incurred directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for a $95,000,000 cash payment for the benefit of the Settlement Class, is an outstanding result.  The Settlement is a direct result of the skill, tenacity, and effective advocacy of Lead Counsel, assisted by the other Plaintiffs' Counsel firms, who litigated this Action for over four years against highly skilled defense counsel, including successfully surmounting Defendants' motions to dismiss and conducting extensive discovery. Plaintiffs' Counsel litigated this Action on a fully contingent fee basis for more than four years,

---

[1] Capitalized terms that are not defined in this memorandum of law have the same meanings as set forth in the Stipulation and Agreement of Settlement dated as of September 2, 2021 (ECF No 165-3) ("Stipulation") or in the Declaration of John Rizio-Hamilton in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Rizio-Hamilton Declaration" or "Rizio-Hamilton Decl."), filed herewith.  Citations to "¶ __" herein refer to paragraphs in the Rizio-Hamilton Declaration and citations to "Ex. __" herein refer to exhibits to the Rizio-Hamilton Declaration.

1

and faced challenges to proving both liability and damages that posed the serious risk that there might be no recovery in the Action.

As detailed in the accompanying Rizio-Hamilton Declaration,[2] Lead Counsel vigorously pursued the claims in this Action for the benefit of the Settlement Class. Among other things, Lead Counsel, with the assistance of the other Plaintiffs' Counsel firms: (i) conducted a wide-ranging investigation concerning the alleged misstatements made by Defendants, including numerous interviews with former Cognizant employees and a thorough review of publicly available information (¶¶ 16-18); (ii) drafted the Consolidated Amended Class Action Complaint filed on April 7, 2017 ("Amended Complaint") and the Second Amended Class Action Complaint filed on April 26, 2019 ("Second Amended Complaint") (¶¶ 19, 37); (iii) researched and drafted detailed briefing in opposition to the Original Defendants' motions to dismiss the Amended Complaint and Defendants' motions to dismiss the Second Amended Complaint (¶¶ 23-29, 38-46); (iv) opposed Cognizant's motions to take an interlocutory appeal from the orders denying its motions to dismiss (¶¶ 31-33, 48); (v) consulted extensively with experts in financial economics, including damages and loss causation, Special Economic Zones ("SEZs") in India, and the Foreign Corrupt Payments Act ("FCPA") (¶¶ 18, 58); (vi) obtained, reviewed, and analyzed more than 660,000 pages of documents (¶¶ 49-56); (vii) prepared a detailed mediation statement that addressed both liability and damages (¶ 60); and (viii) engaged in extensive arm's-length settlement negotiations with Defendants through a mediator to resolve the Action (¶¶ 60-61).

---

[2] The Rizio-Hamilton Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action and a description of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of the litigation; and the facts and circumstances underlying Lead Counsel's request for an award of attorneys' fees and expenses.

The Settlement achieved through Plaintiffs' Counsel's efforts is a particularly favorable result when considered in light of the substantial litigation risks in the Action, including the risks associated with proving Defendants' liability and establishing loss causation and damages. These risks are detailed in the Rizio-Hamilton Declaration at paragraphs 65 to 94 and are summarized in the memorandum of law supporting the Settlement. These risks posed a real possibility that Lead Plaintiffs and the Settlement Class would not be able to recover or would have recovered a lesser amount if the Action proceeded.

As compensation for their efforts on behalf of the Settlement Class and for the risk of nonpayment they faced in bringing and prosecuting the Action on a contingent basis, Lead Counsel now seek an attorney-fee award for all Plaintiff's Counsel in the amount of 20% of the Settlement Fund, net of litigation expenses. As detailed herein, the requested fee is well within the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries on a percentage basis. Further, the requested fee represents a multiplier of approximately 2.2 on Plaintiffs' Counsel's total lodestar, which is well within the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

The fee request has the support of Lead Plaintiffs, which are sophisticated institutional investors that actively supervised the Action. *See* Declaration of Jochen Riechwald, submitted on behalf of Union (Ex. 1) ("Riechwald Decl."), at ¶ 9; Declaration of Deborah Silodor, submitted on behalf of Amalgamated (Ex. 2) ("Silodor Decl."), at ¶ 9; Declaration of Kevin Lindahl, submitted on behalf of Colorado FPPA (Ex. 3) ("Lindahl Decl."), at ¶ 9. Lead Plaintiffs have each approved the fee request as reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *Id.*

In addition, while the deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date no objections have been received. The deadline for objections is November 22, 2021. Lead Counsel will address any objections to the motion for attorneys' fees and litigation expenses in its reply papers, which will be filed by December 6, 2021.

For all the reasons set forth herein and in the Rizio-Hamilton Declaration, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards and, therefore, should be awarded by the Court.

## ARGUMENT

### I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION FROM THE COMMON FUND

It is well settled that an attorney who maintains a lawsuit that results in the creation of a fund or benefit in which others have a common interest may obtain fees from that common fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *9 (D.N.J. July 29, 2013).

In addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citations omitted); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In

order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak,* 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Courts in this Circuit have consistently adhered to these principles.  *See, e.g., Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

## II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained for the Settlement Class and utilize a lodestar cross-check to confirm that the fee is reasonable.  In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund.  *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure.'"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re*

*Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *see In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016). The Third Circuit also recommends that the percentage award be "cross-check[ed]" against the lodestar method to ensure its reasonableness. *See Sullivan*, 667 F.3d at 330.

### III.   THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD

#### A.   The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method

The requested 20% fee is reasonable under the percentage-of-recovery method. While there is no absolute rule, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D at 196. Fees most commonly range from 25% to one-third of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery"); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (same); *see also In re Wilmington Trust Sec. Litig.*, 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (finding 28% to be a "typical fee percentage" in the Third Circuit).

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in this Circuit strongly supports the reasonableness of the requested 20% fee. *See AT&T Corp.*, 455 F.3d at 169 (affirming fee award of 21.25% of $100 million settlement); *Wilmington Trust*, 2018 WL 6046452, at *9 (awarding 28% of $210 million settlement); *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, slip op. at 2 (D. Del. July 18, 2017) (awarding 25% of $74 million settlement) (Ex. 7); *Alaska Elec. Pension Fund*

6

*v. Pharmacia Corp.*, No. 03-1519, slip op. at 2 (D.N.J. Jan. 30, 2013), ECF No. 405 (awarding 27.5% of $164 million settlement) (Ex. 8); *In re Schering-Plough Corp. Sec. Litig.*, No. 01-CV-0829 (KSH/MF), slip op. at 2 (D.N.J. Dec. 31, 2009), ECF No. 163 (awarding 23% of $165 million settlement) (Ex. 9); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 130-31 (D.N.J. 2002) (awarding 28% of $194 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 734-36 (E.D. Pa. 2001) (awarding 25% of $193 million settlement); *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *14-16 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.3 million settlement, net of expenses); *Ikon*, 194 F.R.D. at 192-197 (awarding 30% of $111 million settlement, net of expenses).

In addition, Lead Counsel's fee request is consistent with fees awarded by courts in other Circuits in similarly sized or larger securities class action settlements. *See, e.g., In re Snap Inc. Sec. Litig.*, Case No. 2:17-cv-03679-SVW-AGR, slip op. at 1-2 (C.D. Cal. Mar. 9, 2021), ECF No. 400 (awarding 25% of $154.7 million settlement) (Ex. 10); *In re Signet Jewelers Ltd. Secs. Litig.*, 2020 WL 4196468 at *24 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement, net of expenses); *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031-TSE-MSN, slip op. at 2 (E.D. Va. June 7, 2019), ECF No. 462 (awarding 28% of $108 million settlement) (Ex. 11); *Fresno Cty. Emps.' Ret. Ass'n v. ComScore, Inc.*, 2018 WL 8801073, at *1 (S.D.N.Y. June 7, 2018) (awarding 20% of $110 million settlement); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08-cv-5653-PAC, slip op. at 2-3 (S.D.N.Y. May 10, 2016), ECF No. 277 (awarding 28% of $110 million settlement) (Ex. 12); *Local 703 v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 305 (S.D.N.Y. 2015) (awarding 25% of $180 million

settlement); *Landmen Partners Inc. v. The Blackstone Grp. L.P.,* No. 08 Civ. 3601 (HB), slip op. at 5 (S.D.N.Y. Dec. 18, 2013), ECF No. 191 (awarding 33.3% of $85 million settlement) (Ex. 13); *In re Amaranth Nat. Gas Commodities Litig.*, 2012 WL 2149094, at *2 (S.D.N.Y. June 11, 2012) (awarding 30% of $77.1 million settlement); *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08 Civ. 11117 (TPG), slip op. at 2 (S.D.N.Y. Aug. 19, 2011), ECF No. 603 (awarding 30% of $91.8 million settlement) (Ex. 14); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of $80 million settlement); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), slip op. at 2, 4 (S.D.N.Y. July 18, 2011), ECF No. 117 (awarding 27.5% of $70 million settlement, representing a 4.7 multiplier) (Ex. 15).

**B.     The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check**

The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[3]  "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp. ENHANCE Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

---

[3]  Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

Through October 31, 2021, Plaintiffs' Counsel have spent over 14,400 hours on the prosecution and resolution of this Action. ¶ 115. Plaintiffs' Counsel's lodestar—which is derived by multiplying the hours spent on the litigation by each firm's current hourly rates for attorneys, paralegals, and other professional support staff—is $8,491,422.25.[4] *Id.* Accordingly, the requested 20% fee, which equates to $18,931,957.36 (plus interest on that amount at the same rate as earned by the Settlement Fund), represents a multiplier of approximately 2.2 on counsel's lodestar.

In complex contingent litigation such as this Action, fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. Lodestar multipliers "compensate counsel for the risk of assuming the representation on a contingency fee basis." *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020). Lodestar multipliers of "less than four are well within the range awarded by courts in this Circuit." *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *12 (E.D. Pa. Apr. 18, 2005). *See also Stevens*, 2020 WL 996418, at *13 (approving multiplier of 6.16); *Demaria v. Horizon Healthcare Servs., Inc.*, 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) ("A multiplier of 4.3 is consistent with the considerable risks that counsel faced in taking on this litigation, and the sophisticated legal work required to achieve success."); *Rite Aid*, 362 F. Supp. 2d at 589-90 (reaffirming award of 25% of $126.6 million with 6.96 multiplier); *Ikon*, 194 F.R.D. at 195 (approving a 2.7 multiplier and noting it was "well within the range of those awarded in similar

---

[4] The Supreme Court, Third Circuit, and courts in this District have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Schering-Plough ENHANCE*, 2013 WL 5505744, at *33 ("In utilizing the blended billing rates to calculate the lodestar, the courts allow the use of current billing rates at the time the calculation is made rather than the billing rates actually in effect at the time the hours were recorded.").

cases").

Accordingly, the 20% fee requested here is reasonable under both the percentage-of-the-fund approach and the lodestar approach.

## IV. THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g., Gunter,* 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."). Nonetheless, in exercising that broad discretion, the Third Circuit has noted that a district court should consider the following factors in determining a fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Diet Drugs*, 582 F.3d at 541 (citing *Gunter*, 223 F.3d. at 195 n.1; *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Diet Drugs*, 582 F.3d at 545; *see Schuler*, 2016 WL 3457218, at *9. Each of these factors supports the award of the 20% fee requested by Lead Counsel here.

### A. The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most

critical factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Lead Counsel, on behalf of Lead Plaintiffs, secured a Settlement that provides for a substantial and certain payment of $95,000,000. The Settlement also benefits a large number of investors. To date, the Claims Administrator, JND Legal Administration ("JND"), has mailed 321,462 copies of the Notice to potential Settlement Class Members and their nominees. *See* Declaration of Luigi Segura, submitted on behalf of JND (Ex. 4) ("Segura Decl."), at ¶ 9. Accordingly, while the claim-submission deadline is not until January 28, 2022, a large number of Settlement Class Members can be expected to benefit from the Settlement Fund. *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement].").

**B.    The Reaction of the Settlement Class to the Settlement and Fee Request To Date Supports Approval of the Fee Request**

The Notice has been sent to over 321,000 potential Settlement Class Members and their nominees and posted on a publicly accessible website. The Notice provided a summary of the terms of the Settlement and stated that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 20% of the Settlement Fund. *See* Notice, attached as Exhibit A to Segura Decl., at ¶¶ 5, 57. The Notice also advised Settlement Class Members that they could object to the Settlement or fee request and explained the procedure for doing so. *See id.* at p. 4, ¶¶ 67-68. While the November 22, 2021 objection deadline set by the Court has not yet passed, as noted above, no objections have been received to date.

11

### C.   The Skill and Efficiency of Plaintiffs' Counsel Support Approval of the Fee Request

Lead Counsel's efforts, assisted by the other Plaintiffs' Counsel, have resulted in a favorable outcome for the benefit of the Settlement Class. *See AremisSoft*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained.") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)). The substantial and certain recovery obtained for the Settlement Class is the direct result of the significant efforts of highly skilled attorneys who possess substantial experience in the prosecution of complex securities class actions.[5]   Lead Counsel's success in identifying key confidential witnesses through their investigation, in overcoming Defendants' motions to dismiss in a case with very substantial risks, and obtaining substantial discovery despite the stay pending resolution of the Criminal Action, created the circumstances in which Lead Plaintiffs were able to obtain the $95 million cash Settlement.   In addition, Lead Counsel's reputation as attorneys who will zealously carry a meritorious case through trial and appellate levels further enabled them to negotiate the very favorable recovery for the benefit of the Settlement Class.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Lead Counsel.   *See, e.g., Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Defendants were represented ably by Goodwin Procter LLP, Jones Day, and Paul Weiss

---

[5] Plaintiffs' Counsel consists of Lead Counsel BLB&G; Liaison Counsel Lowenstein Sandler LLP ("Lowenstein"); former co-lead counsel, Motley Rice LLC; and additional counsel Kessler Topaz Meltzer & Check, LLP. The experience of Lead Counsel and the other Plaintiffs' Counsel firms is set forth in their firm resumes, which are attached to the Rizio-Hamilton Declaration as Exhibits 5A-3, 5B-3, 5C-3, and 5D-3.

Rifkind Wharton & Garrison, LLP, all prominent firms, each with considerable experience and skill. ¶ 119. The ability of Lead Counsel to obtain a favorable outcome for the Settlement Class in the face of this formidable legal opposition further confirms the quality of Lead Counsel's representation.

### D.     The Complexity and Duration of the Litigation Support Approval of the Fee Request

The complexity and duration of the litigation also support approval of the fee requested. Securities litigation is regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on several issues, including loss causation and damages. *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, 2008 WL 2229843, *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would [be] lengthy and costly to the parties.").

Here, the $95,000,000 recovery is very favorable in light of the complexity of this case and the significant risks and expenses that the Settlement Class would have faced by litigating to trial. Had this litigation continued without settling, Lead Plaintiffs, through Plaintiffs' Counsel, would have been required to advance their case through the completion of discovery (following resolution of the Criminal Action), which would have included additional document discovery and numerous depositions, including some of witnesses in India. In addition, Lead Plaintiffs would have had to conduct substantial expert discovery (including preparation of expert reports and expert depositions), and litigate a class certification motion. ¶ 123. In addition, it would be highly likely

that Defendants would move for summary judgment, which would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* and *Daubert* motions would have to be filed and argued. *Id*. Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and uncertain. *Id*.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. ¶ 123. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."). Considering the magnitude, expense, and complexity of this securities case—especially when compared against the significant and certain recovery achieved by the Settlement—Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in Lead Counsel's favor.

### E.   The Risk of Non-Payment Supports Approval of the Fee Request

Lead Counsel undertook this Action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses. As explained in detail in the Rizio-Hamilton Declaration, Lead Counsel faced significant risks in this case that could have resulted in no recovery or a recovery smaller than the Settlement Amount. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g., Warner Commc'ns*, 618 F. Supp. at 747-49 (citing cases). This is particularly true

in securities litigation, such as this Action, because securities litigation has long been regarded as "notably difficult and notoriously uncertain." *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

Plaintiffs' Counsel have not been compensated for any of their time or expenses since the case began in 2016. Since that time, Plaintiffs' Counsel have expended over 14,400 hours in the prosecution of this litigation with a resulting lodestar of $8,491,422.25 and have incurred $271,858.21 in litigation expenses. ¶¶ 115, 127. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. This factor strongly favors approval of the requested fee.

## F.     The Significant Time Devoted to this Case by Plaintiffs' Counsel Supports Approval of the Fee Request

As set forth above, since the inception of the case, Plaintiffs' Counsel have expended over 14,400 hours and incurred over $271,000 in expenses prosecuting this Action for the benefit of the Settlement Class. ¶¶ 115, 127. As more fully discussed above and in the Rizio-Hamilton Declaration, this Action was vigorously litigated and defended. This includes, *inter alia,* the considerable time spent in the initial investigation of the case; working extensively with experts; seeking out and interviewing confidential witnesses/former employees with information that would be used to support Lead Plaintiffs' allegations; researching complex issues of law; preparing and filing the two amended complaints; researching and briefing the issues in connection with Defendants' two motions to dismiss and motions for interlocutory appeal; reviewing and analyzing over 660,000 pages of documents produced by Defendants; preparing for the mediation, drafting

15

a detail mediation statement, and engaging in extensive settlement negotiations.  ¶¶ 13-62.  At all times, Lead Counsel conducted their work with skill and efficiency, conserving resources and avoiding duplication of efforts.  The foregoing represents a very significant commitment of time, personnel, and out-of-pocket expenses by Plaintiffs' Counsel while taking on the substantial risk of recovering nothing for their efforts.

**G.    The Requested Fee of 20% of the Settlement Fund is within the Range of Fees Typically Awarded in Actions of this Nature**

As discussed above in Part III, the requested fee of 20% of the Settlement Fund is well within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis.  Accordingly, this factor strongly supports approval of the requested fee.

**H.    The Fact that the Benefits of the Settlement Are Attributable to the Efforts of Plaintiffs' Counsel Support Approval of the Fee Request**

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement actions concerning the alleged wrongdoing. *See Prudential*, 148 F.3d at 338.

Here, while facts uncovered in the DOJ and SEC investigations of the alleged bribery scheme did provide some assistance to Lead Plaintiffs' prosecution of their claims and were included in the Second Amended Complaint, the government investigations were ***not*** of such a nature that they essentially established Defendants' liability or relieved Lead Plaintiffs of the burden of proving the key facts in this case.  For example, among other things, the Government did not prosecute Cognizant, and the Company offered that decision as a fact in its favor.  ¶ 76. Similarly, the government investigations did not assist Lead Plaintiffs in establishing whether the alleged misstatements were material to investors; in fact, Cognizant pointed to the Government's finding concerning the very limited extent of any benefit to Company as evidence of immateriality.

¶ 86.  Nor did the Government investigations touch upon questions of loss causation and damages—which were additional key issues in this Action.  ¶¶ 81-86.

Moreover, Defendants insisted that the government investigations revealed that alleged bribes only concerned construction permits or "planning permits," rather than SEZ licenses, and thus they contended that the investigations, in fact, undermined Lead Plaintiffs' key allegations about the falsity of Defendants' statements about SEZ licenses.  ¶ 39.  And the stay of discovery in this Action resulting from the Criminal Action against Coburn and Schwartz actually made it more difficult for Lead Plaintiffs and their counsel to vigorously pursue the claims in this Action. According, Lead Counsel respectfully submits that creation of the Settlement here is the result of Plaintiffs' Counsel's vigorous pursuit of Lead Plaintiffs' claims through years of litigation, not merely the by-product of the government's investigation.  This factor supports the reasonableness of the requested fee award.  *See, e.g., AT&T*, 455 F.3d at 173.

I.    **The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request**

A 20% fee is also consistent with typical attorneys' fees in non-class cases.  *See Ocean Power*, 2016 WL 6778218, at *29.  If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery.  *See, e.g., id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.").  Lead Counsel's requested fee of 20% of the Settlement Fund is fully consistent with these private standards.

*         *         *

Accordingly, when considered under the Third Circuit's factors, Lead Counsel's requested fee of 20% of the Settlement Fund, net of expenses, is fair and reasonable.[6]

## V.   LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Lead Counsel also respectfully request that this Court approve payment of $271,858.21 for litigation expenses that Plaintiffs' Counsel incurred in connection with this Action.  All of these expenses, which are set forth in declarations submitted by Plaintiffs' Counsel, were reasonably necessary for the prosecution and settlement of this Action.  Counsel in a class action are entitled to recover expenses that were "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'"  *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

The expenses for which Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, expert/consultant fees, mediation fees, document management costs, on-line legal and factual research, photocopying, and postage expenses.  The largest category of expenses was for the retention of Lead Plaintiffs' experts and consultants, which total $106,610.00, or approximately 39% of the total litigation expenses incurred by Plaintiffs' Counsel.  Plaintiffs' Counsel also incurred expenses of $29,290 for mediation costs, and $91,700.42 for the combined costs of on-line legal and factual research, among others.

---

[6] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 340.  This Settlement does not, because Lead Counsel believes that an all-cash recovery is the best remedy for the injury suffered by the Settlement Class.  In these circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

18

A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel is set forth in Exhibit 6 to the Rizio-Hamilton Declaration.  These expense items are recorded separately by Plaintiffs' Counsel, and such charges are not duplicated in the firm's hourly rates.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $475,000, which may include the reasonable costs and expenses of Lead Plaintiffs directly related to their representation of the Settlement Class.  *See* Segura Decl. (Ex. 4), at Ex. A, ¶¶ 5, 57.  The total amount of expenses requested by Lead Counsel is $340,213.21, which includes $271,858.21 for litigation expenses incurred by Plaintiffs' Counsel and, as further described below, $68,355 in reimbursement for costs incurred by Lead Plaintiffs—an amount well below the amount listed in the Notice.  To date, there has been no objection to the expense application.

## VI.   LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER 15 U.S.C. §78U-4(a)(4)

In connection with their request for an award of Litigation Expenses, Lead Counsel also seek an award of a combined $68,355 in costs incurred by Lead Plaintiffs Union, Amalgamated, and Colorado FPPA directly related to their representation of the Settlement Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Here, each of the Lead Plaintiffs seek an award based on the time dedicated by their employees in furthering and supervising the Action.  Specifically, Union seeks an award of $40,375, Amalgamated seeks an award of $11,250, and Colorado FPPA seeks an award of $16,730.  *See* Riechwald Decl. ¶¶ 13-15; Silodor Decl. ¶¶ 13-15; Lindahl Decl. ¶¶ 13-15.

Each of the Lead Plaintiffs took an active role in the litigation and has been fully committed to pursuing the claims on behalf of the proposed class since they became involved in the case. During the course of the litigation, employees of Lead Plaintiffs dedicated a substantial number of hours to the litigation by, among other things: meeting and communicating with Lead Counsel regarding case strategy and developments; reviewing and commenting on pleadings and briefs filed in the Action; undertaking discovery efforts prior to the partial stay; meeting and consulting with Lead Counsel regarding settlement negotiations; and evaluating and approving the proposed Settlement.  *See* Riechwald Decl. ¶¶ 4-8; Silodor Decl. ¶¶ 4-8; Lindahl Decl. ¶¶ 4-8.  These efforts required representatives of Lead Plaintiffs to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class.  In *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21.  As the court noted, their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives."  *Id.*; *see also In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding "$150,000 to Lead Plaintiffs to compensate them for their reasonable costs and expenses directly relating to their representation of the Class pursuant to 15 U.S.C. § 78u–4(a)(4)"); *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463-TWT, slip op. at 4 (N.D. Ga. June 26, 2020) (ECF No. 179) (awarding $121,375.00 to lead plaintiff in PSLRA case); *Schering-Plough ENHANCE*, 2013 WL 5505744, at *37-*38 (approving awards of $102,447 total to lead plaintiffs in PSLRA action).

The awards sought by Lead Plaintiffs are reasonable and justified under the PSLRA based on the time their employees devoted to the Action on behalf of the Settlement Class and should be granted.

**VII.   CONCLUSION**

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 20% of the Settlement Fund, net of Litigation Expenses; $271,858.21 in payment of the reasonable litigation expenses that Plaintiffs' Counsel incurred in connection with the prosecution and resolution of the Action; and an aggregate of $68,355.00 in reimbursement of Lead Plaintiffs' collective costs in representing the Settlement Class in the Action.

Dated: November 8, 2021                    Respectfully submitted,

                                           **LOWENSTEIN SANDLER LLP**
                                           *s/ Michael B. Himmel*
                                           Michael B. Himmel
                                           Michael T.G. Long
                                           One Lowenstein Drive
                                           Roseland, NJ 07068
                                           Telephone (973) 597-2500
                                           Facsimile: (973) 597-2400
                                           Emails:    mhimmel@lowenstein.com
                                                      mlong@lowenstein.com

                                           *Liaison Counsel for Lead Plaintiffs and the*
                                           *Settlement Class*

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
John Rizio-Hamilton (*pro hac vice*)
Abe Alexander (*pro hac vice*)
Jesse Jensen (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Emails:     johnr@blbglaw.com
                  Abe.Alexander@blbglaw.com
                  Jesse.Jensen@blbglaw.com

*Lead Counsel for Lead Plaintiffs and the
Settlement Class*

22

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 8, 2021, I caused the foregoing Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses to be electronically filed with the Clerk of the Court using the ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: November 8, 2021

*s/ Michael B. Himmel*
Michael B. Himmel